OPINION
{¶ 1} Defendant, Dayton Foods Limited Partnership, appeals from the trial court's judgment granting Plaintiff, Penny Riblet, the right to participate in the benefits of the Workers' Compensation Act for the additional conditions of fibromyalgia syndrome and herniated disc at L4-5 with radiculopathy that arise from a condition for which an award was previously made. *Page 2 
 {¶ 2} In January 1989, Riblet began working as a cashier at Cub Foods, which is owned by Dayton Foods. Riblet was promoted to working in the meat department, where her duties included removing meat from the freezers or coolers, placing the twenty to eighty pound meat trays on display for customers, and waiting on customers. On November 6, 1992, while in the course of performing her duties in the meat department, Riblet was injured attempting to move a box of frozen hams. She pulled on the box and a seam on the side of the box became undone. Riblet fell backwards, landing on her tailbone. Riblet finished her shift. Her tailbone was sore that evening and the next morning.
 {¶ 3} On November 10, 1992, Riblet saw her family physician, Dr. Murphy, complaining that her back and right arm were hurt. Dr. Murphy examined Riblet and diagnosed a lumbar strain caused by the accident at work. Dr. Murphy ordered a CT scan, which was performed on November 21, 1992. The CT scan showed "mild canal stenosis at L4-L5 level." Riblet took time off from work due to the pain from her fall at work and in preparation for surgery relating to her endometriosis. Since the birth of her daughter in the early 1980's, Riblet suffered medical problems relating to her endometriosis. She previously had abdominal surgery relating to this condition. On January 4, 1993, Riblet had surgery relating to her endometriosis.
 {¶ 4} On January 28, 1993, Riblet began seeing Dr. Moore for her *Page 3 
work injuries. Dr. Moore ordered an MRI and referred Riblet to Dr. Moncrief. Based on an examination of Riblet, Dr. Moncrief diagnosed a post-traumatic myofascial syndrome with cervical and lumbar strains. Riblet filed a workers' compensation claim, which was granted for a "sprain lumbosacral."
 {¶ 5} Riblet began regular treatment with Dr. Donnini in June 1995. Dr. Donnini interpreted Dr. Moncriefs diagnosis as "fibromyalgia following an injury." In his June 26, 1995 report, Dr. Donnini stated that Riblet's workers' compensation claim should be amended to include fibromyalgia. In February 2001, Riblet filed a motion in her workers' compensation claim to request the additional conditions of "fibromyalgia/myofascial syndrome and herniated disc at L4-L5 with radiculopathy." Riblet's motion was denied by the Industrial Commission, and Riblet filed a timely appeal to the common pleas court pursuant to R.C. 4123.512.
 {¶ 6} The parties agreed to submit the issue to a magistrate. Both parties filed motions in limine, which were denied. The trial took place on June 28, 2005. At trial, Dayton Foods renewed its motion to exclude the testimony of Riblet's expert, Dr. Donnini.
 {¶ 7} The magistrate denied the motion. The magistrate issued a decision on February 13, 2006, granting Riblet's request to participate in the workers' compensation system for fibromyalgia syndrome and herniated disc at L4-5 with radiculopathy. Dayton Foods *Page 4 
filed timely objections, which the trial court overruled. Dayton Foods filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "THE TRIAL COURT ERRONEOUSLY FOUND THAT THE TESTIMONY OF DR. DONNINI MET THE REQUIREMENTS SET FORTH IN OHIO RULE OF EVIDENCE 702(C) AND THEREFORE ERRONEOUSLY DENIED APPELLANT'S MOTION IN LIMINE."
 {¶ 9} Dayton Foods argues that the trial court should have excluded the testimony of Riblet's expert, Dr. Donnini. The admission or exclusion of expert testimony is within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. State v. Jones (2000), 90 Ohio St.3d 403, 414,739 N.E.2d 300. Therefore, the issue before us is not whether we would haveadmitted the testimony of Dr. Donnini in the first instance, but whetherthe trial court abused its discretion in doing so. "The term `abuse ofdiscretion' connotes more than an error of law or judgment; it impliesthat the court's attitude is unreasonable, arbitrary orunconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219(citations omitted).
 {¶ 10} Under Ohio law, any doctor licensed to practice medicine maytestify as an expert on medical issues. Joyce-Couch v. DeSilva(1991), 77 Ohio App.3d 278, 285, 602 N.E.2d 286. "The test ofadmissibility is whether a particular witness offered as an expert willaid the trier of fact in the search of the truth, not whether the expertwitness is the best witness on the subject." Id. (Citationsomitted.) According to Evid. R. *Page 5 
702, an expert may testify if:
 {¶ 11} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 12} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 13} "(C) The witness' testimony is based on reliable, scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 14} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 15} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 16} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 17} Dayton Foods concedes that Dr. Donnini satisfies the requirements of Evid. R. 702(A) and (B), but argues that his testimony does not meet the threshold requirements of Evid. R. 702(C). According to Dayton Foods, Dr. Donnini "simply failed to *Page 6 
provide ANY evidence as to the method he used in rendering his opinion" and that the "mere treatment of patients and reading sources of literature on fibromyalgia cannot meet the threshold requirements of Evid. R. 702(C)."
 {¶ 18} Dr. Donnini testified regarding his treatment of Riblet and explained the bases for his diagnosis of fibromyalgia. Dr. Donnini reported that Riblet's chief complaint was a constant severe low back pain. He compared the results of a May 16, 1994 MRI with the results of an April 14, 1999 MRI. Dr. Donnini interpreted the April 14, 1999 MRI as showing evidence of a central and slightly to the left of center disc herniation that did not exist before. Dr. Donnini testified that he based his diagnosis of fibromyalgia on his previous treatment of patients with similar physical conditions, the findings from his physical examination of Riblet, his review of the medical records, and the taking of Riblet's history. Dr. Donnini's testimony explains his methodology, which is in the nature of a "procedure" for purposes of Evid.R. 702(C). However, as we have previously recognized, "[i]f Ohio courts considered the examination of a patient, review of his medical records, and the taking of his history to be an unreliable methodology, the bulk of all medical testimony would be inadmissible." Hutchins v.Delco Chassis Systems, GMC (Feb. 20, 1998), Montgomery App. No. 16659. Further particulars were not required to explain the procedure he used to arrive at his *Page 7 
diagnosis.
 {¶ 19} Dayton Foods also argues that Dr. Donnini's opinion regarding fibromyalgia should have been excluded because he could not point to one treatise or scientific text that supported the use of a diagnosis of fibromyalgia. We do not agree.
 {¶ 20} At his deposition, Dr. Donnini explained that he had read a large number of medical journals that supported a finding of fibromyalgia as a valid diagnosis. The fact that he could not identify articles by name at his deposition does not necessarily mean that his testimony should be excluded on that basis. Dayton Foods' own medical expert, Dr. Randolph, conceded that the term fibromyalgia syndrome has its own ICD-9 code and that various fields of medicine have recognized the diagnosis of fibromyalgia syndrome.
 {¶ 21} The question under Evid. R. 702(C) is whether, under the totality of the circumstances, the expert's opinion is based on reliable information. An expert's inability to identify a specific article on cross-examination that supports his use of a diagnosis may affect the weight to be given the expert's testimony, but we do not believe it mandates an exclusion of the expert's testimony. Upon this record, we cannot find that the trial court abused its discretion in admitting the testimony of Dr. Donnini.
 {¶ 22} Dayton Foods also argues that the magistrate failed to address Dr. Donnini's refusal to answer certain questions at his *Page 8 
deposition and his failure to appear at the pre-trial hearing relating to Dayton Foods' motion in limine. We do not agree.
 {¶ 23} We have reviewed the transcript from the deposition of Dr. Donnini. Apparently, counsel for Dayton Foods had prior frustrating experiences with Dr. Donnini, which counsel alluded to at the October 16, 2002 deposition. These prior experiences are not part of the record and are not relevant to this dispute. We do not see any evidence in the October 16, 2002 transcript that Dr. Donnini was obstreperous or refused to answer questions. If Dayton Foods believed that it was entitled to further questioning of Dr. Donnini or that Dr. Donnini refused to answer proper questions, then Dayton Foods could have filed a motion to compel or sought discovery sanctions under the Civil Rules. Further, Dayton Foods could have subpoenaed Dr. Donnini to testify at the motion hearing or at trial. Dayton Foods did not employ those alternatives, however.
 {¶ 24} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 25} "THE TRIAL COURT'S FINDINGS THAT THE APPELLEE DID NOT SUFFER FROM LOW BACK PROBLEMS PRIOR TO THE INDUSTRIAL INJURY, THAT APPELLEE'S BACK WAS IN HEALTHY CONDITION PRIOR TO THE INDUSTRIAL INJURY, AND THAT APPELLEE HAD NO BACK PAIN PRIOR TO THE INDUSTRIAL INJURY CONSTITUTE MISTAKES OF FACT."
 {¶ 26} Dayton Foods argues that the trial court's decision should *Page 9 
be vacated, because the decision "is based, in part, on the Magistrate's inaccurate findings that [Riblet] had not suffered from any back related problems or back pain prior to her industrial injury, and that [Riblet's] back was in healthy condition prior to her industrial injury." Dayton Foods cites three sentences from the magistrate's decision that references evidence of lower back pain suffered by Riblet prior to the industrial accident. Dayton Foods then argues that the magistrate improperly ignored this evidence when rendering the decision. We do not agree.
 {¶ 27} Prior to making the ultimate finding of coverage, the magistrate made extensive findings regarding the history and treatment of Riblet's back pain. The magistrate did not ignore the medical records that noted back pain prior to the November 1992 industrial accident. Rather, the magistrate recognized that Riblet suffered from endometriosis prior to the industrial accident and that endometriosis can and did cause Riblet some lower back pain. But the magistrate found that there was sufficient medical evidence to support Riblet's claim that her back pain increased after the industrial accident, and that the back pain that she suffers today was caused by the industrial accident.
 {¶ 28} The magistrate found that "Riblet experienced no separate injury or trauma to her back after November 6, 1992 that would otherwise explain the persistent lower back pain, radiculopathy, *Page 10 
muscular pain and other symptoms that Riblet has experienced since that date, despite ongoing medical treatment. Dr. Donnini diagnosed Penny Riblet's additional medical condition as fibromyalgia and concluded in his expert opinion, that Riblet's fibromyalgia was a direct result of Riblet's fall at work on November 6, 1992. There is no expert medical opinion testimony that contradicts Dr. Donnini's expert medical opinion that Riblet's fibromyalgia syndrome resulted from her fall and injury on November 6, 1992."
 {¶ 29} The record supports the magistrate's finding. Riblet testified that her back pain prior to the industrial accident was mild. At the request of Dayton Foods, Riblet had x-rays of her back in 1989 to determine whether Riblet would be cleared for heavy lifting and working in the meat department at Cub Foods. After the x-rays were taken, Riblet was cleared to work in the meat department. On December 21, 1992, an entry appears in Riblet's medical records that Riblet complained that her pain was worse after her fall at work. Dr. Moncrief, a neurological surgeon, opined that Riblet's pre-industrial accident medical history was not related to her present pain. Dr. Moore treated Riblet from January 28, 1993 to March 20, 1995 and believed that Riblet's thoracic sprain was caused by Riblet's industrial accident. Finally, Dr. Donnini, who began regular treatment of Riblet in June 1995, believed that Riblet's lower back injuries and pain were related to her work accident. *Page 11 
 {¶ 30} Contrary to the arguments of Dayton Foods, the magistrate did consider the evidence of back pain suffered by Riblet prior to the industrial accident. The second assignment of error is overruled. The judgment of the trial court will be affirmed.