[Cite as *Schnipke v. Safe-Turf Installation Group, L.L.C.*, 190 Ohio App.3d 89, 2010-Ohio-4173.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

SCHNIPKE,

      APPELLEE,

                                     CASE NO.  1-10-07

      v.

SAFE-TURF INSTALLATION
GROUP, L.L.C.,

      APPELLANT;                           O P I N I O N

BUREAU OF WORKERS' COMPENSATION,

      APPELLEE.

Appeal from Allen County Common Pleas Court
Trial Court No. CV-2008-1288

Judgment Affirmed

Date of Decision:   September 7, 2010

APPEARANCES:

      Richard E. Siferd and Julie M. Shaw, for appellee Craig Schnipke.

      Robert P. King and Mark S. Barnes, for appellant.

      Colleen C. Erdman, for appellee Bureau of Workers' Compensation.

**WILLAMOWSKI, Presiding Judge.**

{¶1} Defendant-appellant, Safe-Turf Installation Group, L.L.C. ("Safe-Turf"), appeals the decision of the Allen County Court of Common Pleas entering judgment in favor of plaintiff-appellee, Craig Schnipke, after a jury found that Schnipke was entitled to participate in the workers' compensation fund as a result of a work-related injury to his right knee. Safe-Turf contends that the trial court erred by failing to exclude unreliable expert testimony, by failing to give proper jury instructions and jury interrogatories, and by failing to grant Safe-Turf's motion for summary judgment prior to trial. For the reasons set forth below, the judgment is affirmed.

{¶2} This case arises out of a workers' compensation claim in which Schnipke claims that he injured his right knee while he was working at Safe-Turf on February 12, 2008. Safe-Turf makes rubberized athletic sports mats for running tracks and fitness centers/gyms. While he was working, Schnipke felt his right knee "pop," resulting in great pain and precluding him from placing any weight on it. Schnipke was unable to continue working, so he went home and then saw a physician at Orthopaedic Institute of Ohio the following day. After an MRI examination was performed, Dr. Nieman diagnosed Schnipke's injury as a torn right medial meniscus, which eventually required surgery.

{¶3} Safe-Turf maintains that there was nothing about the work process or the work conditions that caused Schnipke's torn meniscus. Safe-Turf contends that Schnipke was merely walking when he claims he felt the pain in his knee, that he was not carrying any product or loading anything at the time, and, therefore, the injury was not related to or caused by his job. Safe-Turf claims that the injury was the result of Schnipke's large size and could have happened anywhere. Schnipke was over six feet, eight inches tall[1] and weighed over 400 pounds.

{¶4} Schnipke filed a claim for workers' compensation benefits for his injury. Initially, the bureau denied the claim, and Schnipke appealed the decision to the Industrial Commission. On appeal, a hearing officer allowed the claim, and this decision was upheld by the commission. On August 28, 2008, Safe-Turf appealed to the trial court pursuant to R.C. 4123.512, and thereafter, filed a motion for summary judgment. The trial court denied Safe-Turf's motion for summary judgment,[2] and on November 23, 2009, the case proceeded to a jury trial.

{¶5} At trial, Schnipke testified that he had been working at his job, and as he was "turning, rotating" to take another bag off the machine, his knee

---

[1] The medical reports listed Schnipke as six feet, eight inches tall. Schnipke testified that he was measured as six feet eleven. His weight was listed as 420 pounds in one record and 430 pounds in another.

[2] Safe-Turf filed a motion for summary judgment on April 3, 2009, and Schnipke filed a response on April 28, 2009. The trial court denied Safe-Turf's motion on April 30, 2009. However, before Safe-Turf learned of the trial court's ruling, it filed a reply memorandum in support of summary judgment. Because the trial court did not have the opportunity to review the reply memorandum before ruling, Safe-Turf filed a motion for reconsideration. The trial court reconsidered Safe-Turf's motion for summary judgment in light of the arguments set forth in the reply memorandum and, on May 15, 2009, again overruled Safe-Turf's motion for summary judgment.

"popped," and he was in instant, severe pain. He described his job duties as follows:

> There's a roll of plastic bags. I pull one off, put it on the machine and let the machine clamp down. It fills it to 55 pounds. I take that off, turn, sit it on a sealer, put it in the sealer, let it seal. By the time I'm grabbing the next bag, putting that on the machine. I got that bag done. I turn around, grab the bag off the sealer, turn around, walk over there, put them on a pallet, pat it down to flatten it out a little bit and then I turn right back around and do the process all over again. And it's continuous all night long.

Schnipke also testified that the job was usually a two-person job, but he was doing it alone because they were short of help. He further testified that his supervisor had increased the speed of the machine without telling him. He had to move fast because the conveyor belt feeding the pellets ran continuously, and the bag would overflow if he did not keep up. He estimated that he had been working for approximately 20 minutes into his shift and had filled about 25-30 bags before his knee popped.

{¶6} Schnipke's mother, Vicky Schnipke, testified that Schnipke was 20 years old at the time of the injury and lived at home. Mrs. Schnipke, a registered nurse, testified as to the pain and condition of Schnipke's knee when he returned home that evening and to taking him to see an orthopedic specialist the following day. She confirmed Schnipke's testimony that he had never had any prior health problems, other than having his tonsils removed when he was five and having to

-4-

miss a few practices and briefly wearing a brace on his *left* knee when he played high school football.

**{¶7}** Dr. Nieman, Schnipke's treating physician, testified via his video deposition as to his initial examination of Schnipke and explained the MRI report finding a "displaced bucket handle tear of the medial meniscus."[3] Based on Schnipke's description that the knee popped when he turned or twisted it at work, Dr. Nieman stated that he believed that the injury was caused by his work. Dr. Nieman testified that he did not believe that Schnipke's massive body weight alone could have caused the injury, stating that he had a "massive injury" and "a big acute, usually a turn kind of torque injury where the knee somewhat subluxes a little bit and you grab that tear, and the tear gets pulled in front of the knee."

**{¶8}** Richard Horstman, a company owner and vice president, testified that the work Schnipke was doing that evening was repetitive, but not really strenuous. He also testified that it was not normally a two-person job unless someone was being trained.

**{¶9}** Last, Dr. McGowen testified for Safe-Turf via video deposition.

---

[3] The doctor explained Schnipke's "bucket handle" tear as follows: "On the side that [Schnipke] had pain on, the front side of his knee, the meniscus was torn so bad that it was flipped forward and locked, like a bucket handle would flip forward and lock, in the front part of his knee. So he had lost, I think the back half or two-thirds of his meniscus that was flipped forward and locked in the front part of his knee. So, usually very painful at the start and difficulty to walk around on."

Dr. McGowen was a semiretired internal-medicine physician who had never met or personally examined Schnipke. Dr. McGowen deferred to Dr. Nieman's diagnosis of the torn meniscus. However, Dr. McGowen testified that it was his opinion that the meniscus tear occurred spontaneously as a result of precocious degenerative joint disease, that he didn't believe that Schnipke's work activities proximately caused the torn meniscus, and that Schnipke's morbid obesity could not be ruled out as a cause.

{¶10} The jury entered a unanimous verdict in favor of Schnipke. On December 21, 2009, the trial court filed its judgment, finding that Schnipke was entitled to participate in the workers' compensation fund for the condition of "right medial meniscus tear." It is from this decision that Safe-Turf now appeals, raising the following four assignments of error for our review.

### First Assignment of Error

The trial court committed reversible error by failing to grant Safe-Turf Installation Group, LLC's motion for summary judgment where Appellee Craig Schnipke sustained an unexplained knee injury and failed to rule out idiopathic causes of the injury.

### Second Assignment of Error

The trial court committed reversible error by failing to exclude the expert testimony of James Nieman, M.D., because Dr. Nieman failed to give a reliable opinion under Evid.R. 702(C).

### Third Assignment of Error

Assuming the trial court properly denied Safe-Turf Installation Group, LLC's motion for summary judgment, the court committed reversible error by failing [to] instruct the jury to rule out idiopathic causes of Appellee Craig Schnipke's knee injury and by failing to include Safe-Turf Installation Group's proposed jury interrogatory on idiopathic causes.

### Fourth Assignment of Error

The trial court committed reversible error by giving the jury an instruction on "aggravation," where there was no record evidence to support an aggravation condition or theory of recovery.

### *First Assignment of Error*

{¶11} In its first assignment of error, Safe-Turf argues that it was entitled to prevail on its motion for summary judgment because Schnipke failed to rule out that a pre-existing condition, his morbid obesity, caused his knee injury. Safe-Turf maintains that a workers' compensation claimant is required by law to prove that an injury sustained at work is unrelated to idiopathic causes when the injury occurs as the result of an unexplained event. And Safe-Turf contends that even if Schnipke had ruled out a pre-existing condition as the cause of his injury, he failed to sustain his burden of establishing that the injury was proximately caused by the performance of his job.

{¶12} Summary judgment is appropriate when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). "Summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is

adverse to the party against whom the motion for summary judgment is made * * *." Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 364 N.E.2d 267. "The purpose of summary judgment is not to try issues of fact, but is rather to determine whether triable issues of fact exist." *Schnippel Constr., Inc. v. Profitt*, 3d Dist. No. 17-09-12, 2009-Ohio-5905, ¶10, quoting *Lakota Local School Dist. Bd. of Edn. v. Brickner* (1996), 108 Ohio App.3d 637, 643, 671 N.E.2d 578.

{¶13} The trial court denied Safe-Turf's motion for summary judgment, finding that there were material issues of fact as to whether Schnipke's condition was caused by a workplace accident. For several reasons, we find that Safe-Turf's challenge of this decision on appeal is without merit.

{¶14} First, Safe-Turf has misconstrued the burden placed on the nonmoving party. When responding to a motion for summary judgment, the nonmoving party does not have to prove its case; it is required only to set forth specific facts showing that there is a genuine issue for trial. See Civ.R. 56(E); *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Safe-Turf's arguments on appeal complain that Schnipke did not establish the necessary elements of his case. Schnipke's only burden was to set forth specific facts showing that there were genuine issues of fact to be determined at trial.

{¶15} More important, however, the jury weighed all the evidence and unanimously found that Schnipke had proved by a preponderance of the evidence

that he was entitled to participate in the workers' compensation fund as a result of a work-related injury. This alone demonstrates that there were triable issues of fact and that reasonable minds could come to a conclusion that was adverse to Safe-Turf's position. Safe-Turf's argument has been rendered moot.

> Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made.

*Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615, syllabus. The Ohio Supreme Court further reasoned, "The question whether the trial court erred in denying [the movant's] motion for summary judgment became irrelevant and the error (if any) was corrected when the jury determined the issues at trial in favor of [the nonmovant]." Id. at 157-158.

{¶16} The issues tried before the jury were the same issues raised by Safe-Turf in its motion for summary judgment. The jury had the opportunity to hear the witnesses, judge their credibility, and weigh the evidence. On appeal, Safe-Turf did not raise any issues questioning the sufficiency of the evidence or whether the decision was against the manifest weight of the evidence. Nor did Safe-Turf claim that the trial court erred in denying its motions for a directed verdict. The jury's decision after a trial on the merits renders the trial court's decision on Safe-Turf's

motion for summary judgment irrelevant. The issue is moot, and Safe-Turf's first assignment of error is overruled.

### *Second Assignment of Error*

{¶17} In its second assignment of error, Safe-Turf argues that Schnipke's physician failed to provide a reliable expert opinion on causation under Ohio law. Even though Dr. Nieman may have qualified as an expert witness under Evid.R. 702(B), Safe-Turf complains that his testimony as to causation should have been excluded under Evid.R. 702(C), because Dr. Nieman's expert opinion on causation was unscientific and unreliable.

{¶18} Safe-Turf maintains that the trial court failed in its role as a gate-keeper when it denied its motion in limine to exclude Dr. Nieman's opinion testimony, because Dr. Nieman failed to provide the scientific methodology underlying his opinion as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, and *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683.

{¶19} Trial courts have broad discretion in determining the admissibility of expert testimony, subject to review for an abuse of discretion. *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶16. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Valentine* at ¶20. "Courts should favor the admissibility of expert testimony

whenever it is relevant and the criteria of Evid.R. 702 are met." *State v. Nemeth* (1998), 82 Ohio St.3d 202, 207, 694 N.E.2d 1332. In order for scientific evidence to be admitted, it must be reliable and "must assist the trier of fact in determining a fact issue or understanding the evidence." *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 611, 687 N.E.2d 735, following *Daubert*.

{¶20} Evid.R. 702 governs the admissibility of expert testimony and provides as follows:

> A witness may testify as an expert if all of the following apply:
>
> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable, scientific, technical, or other specialized information.

{¶21} In determining whether an expert's testimony is reliable, courts must focus their inquiry "on whether the opinion is based upon scientifically valid principles, not whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof at trial." *Miller v. Bike Athletic Co.*, at paragraph one of the syllabus. "The credibility of [an expert's] conclusion and the relative weight it should enjoy are determinations left to the trier of fact." *Nemeth* at 210.

{¶22} Safe-Turf does not object to Dr. Nieman's being qualified as an expert under Evid.R. 702(B). Under Ohio law, any doctor licensed to practice medicine may testify as an expert on medical issues. *State v. Snodgrass,* 177 Ohio App.3d 556, 2008-Ohio-4019, 895 N.E.2d 259, ¶ 7-8. Safe-Turf complains that Dr. Nieman failed to provide the basis for his opinion that Schnipke's employment proximately caused the torn meniscus, asserting that unscientific opinions must be excluded because they have no place in a court of law.

{¶23} Dr. Nieman was an experienced orthopedic surgeon with a subspecialty in orthopedic sports medicine. He was also Schnipke's treating physician. He examined Schnipke's knee the day after the injury, he reviewed the MRI images diagnosing the torn meniscus, and he performed the surgery on Schnipke's knee.

{¶24} Dr. Nieman's video deposition was played at trial, showing the doctor answering the questions posed and referring to Schnipke's medical records. The doctor answered questions about his training and experience, he described his examination of Schnipke, and he explained what was involved with a torn medial meniscus. The doctor was asked, "In your opinion, Doctor, was the injury which you diagnosed in Schnipke caused by the work activities described by Schnipke and the history given to you by Schnipke?" Dr. Nieman responded in the affirmative.

{¶25} It was evident from the testimony that Dr. Nieman arrived at his opinions by going through the history of the injury, the background information given to him by Schnipke, his examinations, and his review of the imaging studies. He was also given several hypothetical questions, to which he gave his opinion to a reasonable degree of medical certainty, based on his medical training and experience. Furthermore, as the trial court noted, "[t]he 'what if' questions and 'please assume' questions put into play [Schnipke's] credibility as to the events," and were, therefore, matters for the jury to evaluate.

{¶26} The methods and principles used by Dr. Nieman were those generally applied in the formation of most medical opinions. We do not see any evidence in the trial or deposition transcripts that Dr. Nieman varied from the methods that other orthopedic surgeons would use in making a disability evaluation. We agree with the Second District Court of Appeals' commentary that "[i]f Ohio courts considered the examination of a patient, review of his medical records, and the taking of his history to be an unreliable methodology, the bulk of all medical testimony would be inadmissible." See *Riblet v. Dayton Foods Ltd. Partnership*, 2nd Dist. No. 2006CA0058, 2007-Ohio-672, ¶18.

{¶27} In *Eve v. Johnson* (Oct. 30, 1998), 1st Dist. No. C-970957, 1998 WL 754320, the First District Court of Appeals reviewed a similar issue wherein the defendant was questioning whether the orthopedic physician's methodology met

the requirements of Evid.R. 702(C). The court stated, "[T]his is not a *Daubert* case," noting that "[o]rthopaedics is simply not the kind of 'junk science' or unproven theory that Evid.R. 702(C) was drafted to exclude." Id. at * 3, quoting *Hutchins v. Delco Chassis Sys., GMC* (Feb. 20, 1998), 2nd Dist. No. 16659, 1998 WL 70511, * 4.

{¶28} Based on the above, we find that the trial court's decision to allow Dr. Nieman's expert testimony was not unreasonable, arbitrary, or unconscionable. Safe-Turf's second assignment of error is overruled.

### Third and Fourth Assignments of Error

{¶29} Safe-Turf's third and fourth assignments of error contend that the trial court made several errors involving the jury instructions. Specifically, Safe-Turf maintains that (1) the trial court should not have instructed the jury on aggravation of injuries, because there was no evidence to support such an instruction, (2) the trial court failed to give an instruction addressing the idiopathic nature of Schnipke's injury, and (3) the trial court erred when it failed to give the jury interrogatories concerning the potential idiopathic nature of Schnipke's injury.

{¶30} In reviewing the sufficiency of jury instructions given by a trial court, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of

discretion under the facts and circumstances of the case. *State v. Wolons* (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. A strong presumption exists in favor of the propriety of jury instructions. *Burns v. Prudential Secs., Inc.,* 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶41. Generally, the trial court should give requested jury instructions "if they are correct statements of the law applicable to the facts in the case." *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828. Instructions that in their totality are sufficiently clear to permit the jury to understand the relevant law will not be the cause of a reversal upon appeal. *Burns* at ¶41. Whether the jury instructions correctly state the law is a question of law, which we review de novo. *Murphy* at 591.

{¶31} Safe-Turf submitted four proposed jury interrogatories. The trial court used two of those interrogatories, which were submitted to the jury and answered in the affirmative by all eight jurors before arriving at their verdict:

> (1) Did plaintiff sustain an injury in the course of his employment at Safe-Turf on February 12, 2008?

> (2) Did plaintiff's injury to his right knee arise out of his employment on February 12, 2008?

{¶32} The trial court did not use the other two proposed juror interrogatories, although it did include an instruction to the jury on "pre-existing

Case No. 1-10-07

conditions."[4]  The two unused interrogatories that were submitted by Safe-Turf were:

> Was plaintiff's injury on February 12, 2008 the result of an unexplained event?

> Did plaintiff present evidence which would rule out his pre-existing condition of morbid obesity as a cause of injury on February 12, 2008?

{¶33} Safe-Turf's first issue concerning the jury instructions complains that the trial court should not have given the instruction on the risk of aggravation of pre-existing conditions (see fn. 4) because "the present case does not involve an aggravation of a pre-existing condition."

{¶34} The trial court's jury instruction concerning pre-existing conditions came from the Ohio Jury Instructions, 1 Ohio Jury Instructions Section 427.13, and was a correct statement of the law pursuant to R.C. 4123.01(C).  Furthermore, Safe-Turf had submitted a request for an interrogatory concerning Schnipke's "pre-existing condition of morbid obesity," his alleged condition of "morbid obesity" was mentioned throughout the trial, and Safe-Turf's expert repeatedly testified regarding degenerative and arthritic conditions in Schnipke's right knee, implying that they were pre-existing conditions involved in Schnipke's injury.  We fail to see how the trial court erred in giving this instruction to the jury.

---

[4] The instruction concerning pre-existing conditions that was read to the jury was "Employers take their employees as they find them and assume the risk of having an employee's pre-existing condition substantially aggravated by some injury which would not hurt or bother a perfectly healthy person."

{¶35} In the remaining two jury-instruction issues, pertaining to the third assignment of error, Safe-Turf complains that the trial court failed to give jury instructions and an interrogatory pertaining to the "idiopathic nature of Appellee's alleged injury." In addition to the proposed interrogatory discussed above, Safe-Turf had requested the following jury instruction: "Injuries caused by unexplained events are not compensable unless the plaintiff can rule out pre-existing conditions as the cause of the injury."

{¶36} For workers' compensation purposes, "idiopathic" refers to an employee's preexisting physical weakness or disease that contributes to the accident. *Waller v. Mayfield* (1988), 37 Ohio St.3d 118, 121, 524 N.E.2d 458, fn. 3, citing 1 Larson, The Law of Workmen's Compensation (1985) 3-308, Section 12.00; *Chappell v. Wal-Mart Stores, Inc.*, 3rd Dist. No. 9-08-43, 2009-Ohio-542, ¶17. A trial court must charge a jury with instructions that are a correct and complete statement of the law. *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 482 N.E.2d 583. However, the precise language of a jury instruction is within the discretion of the trial court. *Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d 679, 690, 591 N.E.2d 762. A trial court has no obligation to give jury instructions in the language proposed by the parties, even if the proposed instruction is an accurate statement of the law. *Henderson v. Spring Run Allotment* (1994), 99

Ohio App.3d 633, 638, 651 N.E.2d 489. "Instead, the court has the discretion to use its own language to communicate the same legal principles." Id.

{¶37} In addition to the instruction on pre-existing conditions, the trial court gave the jury the following instruction.

> Injury includes any injury, whether caused by external accidental means or accidental in character, received in the course of, and arising out of, the injured employee's employment. Injury does not include injury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body. Nor does injury include physical harm caused by outside or external circumstances.

{¶38} In reviewing the total of all of the 12 pages of jury instructions, we find that they were correct statements of the law and were applicable to the facts in the case. Safe-Turf's proposed idiopathic instruction was based upon this court's decision in *Chappell v. Wal-Mart Stores, Inc.*, 2009-Ohio-542, which involved an unexplained fall. In the case before us, Schnipke's injury was not an "unexplained injury" – the record is replete with evidence that he was turning while he was walking fast in order to grab another bag, as required by his job. As recorded in Dr. Nieman's medical records, Schnipke told him that he was "just somewhat pivoting or twisting on this right knee and he felt a pop in his knee and he almost felt like the knee subluxed or gave way on him." Granted, the weight that Schnipke put on his knee as he was turning was substantial, but employers must take their employees as they find them.

{¶39} The trial court's choice of jury instructions and interrogatories was not an abuse of discretion. Safe-Turf's third and fourth assignments of error are overruled.

{¶40} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

ROGERS and SHAW, JJ., concur.