[Cite as *State v. Dirmeyer*, 2014-Ohio-759.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                   CASE NO. 13-13-24

      v.

WESLEY A. DIRMEYER,                  O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 13CR0013

**Judgment Affirmed**

Date of Decision:   March 3, 2014

APPEARANCES:

    *Jonathan G. Stotzer* for Appellant

    *Derek W. DeVine* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Wesley A. Dirmeyer, appeals the Seneca County Court of Common Pleas' judgment entry of conviction. We affirm.

{¶2} On January 14, 2013, Dirmeyer went uninvited to the residence of Callie Smith—his former girlfriend, roommate, and mother of his minor daughter—immediately following a telephone argument he had with Smith concerning visitation. (Mar. 28, 2013 Tr. at 117, 149, 160). Dirmeyer and Smith continued their argument on the front porch of the residence while Smith remained behind the screen door. (*Id.* at 150-151, 161). After Smith told Dirmeyer to leave and closed the front door, allegedly hitting Dirmeyer in the face, Dirmeyer punched the door causing damage to it. (*Id.* at 118-120, 150-151, 162). Smith then opened the front door to inspect the damage and told Dirmeyer that she was reporting it to the police. (*Id.* at 152, 165). Dirmeyer then forced his way into the residence and physically assaulted Smith. (*Id.* at 152, 162). Immediately after the incident, Dirmeyer went to the local police department and admitted that he physically assaulted Smith. (*Id.* at 121, 128-129, 141, 211); (State's Ex. 7).

{¶3} On February 6, 2013, the Seneca County Grand Jury indicted Dirmeyer on Count One of aggravated burglary in violation of R.C. 2911.11(A)(1), (B), a first-degree felony, and Count Two of domestic violence in violation of R.C. 2919.25(A)(1), (D)(3), a fourth-degree felony. (Doc. No. 2).

{¶4} On February 28, 2013, Dirmeyer entered not guilty pleas at arraignment. (Feb. 28, 2013 Tr. at 4). On March 29, 2013, a jury found Dirmeyer guilty on both counts. (Doc. Nos. 27-29).

{¶5} On May 14, 2013, the trial court sentenced Dirmeyer to six years imprisonment on Count One and 15 months imprisonment on Count Two. (May 14, 2013 Tr. at 26-27). The trial court ordered that Dirmeyer serve the terms consecutively for an aggregate sentence of seven years and three months. (*Id.*). On May 20, 2013, the trial court filed its judgment entry of sentence. (Doc. No. 32).

{¶6} On June 18, 2013, Dirmeyer filed a notice of appeal. (Doc. No. 37). Dirmeyer appeals raising two assignments of error. Because Dirmeyer's assignments of error raise related issues, we combine them for analysis.

### Assignment of Error No. I

**The trial court erred in including in the jury instructions "one can commit a trespass and a burglary against property of which one is the legal owner if another has control or custody of that property."**

### Assignment of Error No. II

**The trial court erred in denying the defenses [sic] Criminal Rule 29 motion for directed verdict of acquittal on the grounds that the required element of trespass was not established prima facie according to law and the aggravated burglary charge must be dismissed.**

{¶7} In his first assignment of error, Dirmeyer argues that the trial court erred by instructing the jury that one could commit a trespass even if one was the legal owner of the property where another has control or custody of that property. Dirmeyer argues that he could not trespass as that term is defined in R.C. 2911.21 because he signed the lease agreement with Smith and was a cotenant. Dirmeyer argues that his moving out, surrendering his key, and expressing his desire to be removed from the lease does not change his legal right to possession as a cotenant under the still-valid lease.

{¶8} In his second assignment of error, Dirmeyer argues that the trial court erred by denying his Crim.R. 29(A) motion, because the State failed to prove he committed a criminal trespass as defined in R.C. 2911.11, an element of his aggravated burglary conviction. Again, Dirmeyer argues that he did not trespass in the residence because he was a cotenant with an equal right of possession.

{¶9} Whether jury instructions correctly stated the applicable law is reviewed on appeal de novo. *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 34; *Schnipke v. Safe-Turf Installation Group*, *L.L.C.*, 190 Ohio App.3d 89, 2010-Ohio-4173, ¶ 30 (3d Dist.).

{¶10} "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been

proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), syllabus. A Crim.R. 29(A) motion is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence. *See State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶11} When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus.

{¶12} The evidence in this case established that Dirmeyer was Smith's former live-in boyfriend and the father of one of Smith's minor daughters. (Mar. 28, 2013 Tr. at 111, 115, 132, 143-144, 183-184, 202). Dirmeyer lived with Smith at the residence in question about a year and a half but moved out on June 28, 2012. (*Id.* at 144, 156, 186). Dirmeyer and Smith both signed a lease for the residence. (*Id.* at 205). When they lived together, Dirmeyer and Smith paid bills from a joint checking account; however, Smith terminated the account a few months after Dirmeyer vacated the residence. (*Id.* at 204, 214).

{¶13} When Dirmeyer moved out, he loaded his belongings into a Budget truck, leaving behind only two televisions and a mirror, which he picked up off the front porch at a later date, according to Smith. (*Id.* at 145, 196-197). Dirmeyer

indicated that he had left a beanbag chair at the residence; however, Smith testified that Dirmeyer had originally told her she could keep it for her son. (*Id.* at 145-146). Since Dirmeyer left, Smith has paid the full amount of rent and all of the utilities, Dirmeyer surrendered his key, and Smith changed the locks in October 2012. (*Id.* at 147-148). Since June 2012, Dirmeyer has been to the residence only three times and only when Smith was present, and he never spent the night. (*Id.* at 148).

{¶14} Dirmeyer testified that he asked Smith to remove his name from the lease after he vacated. (*Id.* at 206, 215). Smith asked the landlord to remove Dirmeyer's name from the lease, but the landlord refused, because the landlord could not inspect the property for damages. (*Id.* at 147, 158). According to Smith, Dirmeyer did not have any clothing in the residence after he vacated. (*Id.* at 158). Dirmeyer, on the other hand, testified that he left a crib, a beanbag chair, a couple gas cans, a mirror, two televisions, and his older daughter's (not Smith and Dirmeyer's daughter) clothes and toys at the residence. (*Id.* at 207, 215). Dirmeyer lived with his mother until November 2012 when he moved into an apartment on Walker Street. (*Id.* at 165, 171, 188, 192, 196, 202). Dirmeyer admitted that he had not lived with Smith for the past six to eight months, and that he had received his mirror a couple days prior to the incident. (*Id.* at 213, 216).

**{¶15}** Based on this evidence, the trial court instructed the jury, in pertinent part: "[o]ne can commit a trespass and a burglary against property of which he is the legal owner if another has control or custody of that property." (*Id.* at 248). The trial court stated that this instruction was based on the Ohio Supreme Court's decision in *State v. Lilly*, in which the Court concluded:

> [T]he purpose of burglary law is to protect the dweller, we hold that custody and control, rather than legal title, is dispositive. See R.C. 2911.21(E), providing that "'land or premises' includes any land, building, structure, or place belonging to, controlled by, or in custody of another, and any separate enclosure or room, or portion thereof." (Emphasis added.) Thus, in Ohio, one can commit a trespass and burglary against property of which one is the legal owner if another has control or custody of that property.

87 Ohio St.3d 97, 102 (1999); (Mar. 28, 2013 Tr. at 230).

**{¶16}** Despite the fact that the trial court's jury instruction was taken verbatim from *State v. Lilly*, Dirmeyer argues that this case is distinguishable, because *Lilly* involved spousal rights and Smith and he were never married, and, more importantly, the husband in *Lilly* was not a cotenant under the lease agreement like him. While these observations are true, we are not persuaded that the trial court erred by instructing the jury based upon the rule in *Lilly*.

**{¶17}** First, the holding in *Lilly* was not limited to husbands and wives. Second, the fact that the husband in *Lilly* was not a party to the lease was but one factor the Court applied—it also noted that the husband in *Lilly* did not live at the apartment, did not have a key, and did not have any belongings in the apartment. 87 Ohio St.3d at 103. Third, the Court of Appeals has applied *Lilly* to relationships other than husband-wife and where the defendant was a cotenant under the lease agreement. *State v. Nelson*, 11th Dist. Ashtabula No. 2002-A-0019, 2003-Ohio-5699, ¶ 21-24 (former boyfriend could be convicted of burglary even if he was on the lease agreement where the victim had custody and control of the apartment in question); *State v. Hinojosa*, 12th Dist. Butler No. CA2003-05-104, 2004-Ohio-1192, ¶ 14-17 (former boyfriend could be convicted of burglary even if his name was on the lease, because he moved out of the apartment relinquishing custody and control of the apartment to his former girlfriend). *See also State v. Pickens*, 3d Dist. Crawford No. 3-07-30, 2008-Ohio-1140, ¶ 18 (former live-in boyfriend could be found guilty of burglary even though he used to live in the apartment and had access to the apartment through the garage and even though the apartment door was unlocked when he entered to commit the crime) (citing *Lilly*, *supra*). In light of the foregoing authorities and the evidence presented relevant to this issue, we are not persuaded that the trial court erred in instructing the jury based on *Lilly*.

{¶18} The trial court also did not err by denying Dirmeyer's Crim.R. 29(A) motion based on the fact that he was a cotenant under the lease agreement. "Because the purpose of burglary law is to protect the dweller, * * * custody and control, rather than legal title, is dispositive." *Lilly*, 87 Ohio St.3d at 102. There was ample evidence to demonstrate that Smith had sole possessory interest in the residence. *See State v. O'Neal*, 103 Ohio App.3d 151, 155 (1st Dist.1995). Once the relationship ended, Dirmeyer vacated the residence on June 28, 2012—the incident in this case occurred on January 14, 2013, almost six months later. After he left, Dirmeyer removed his belongings (except a few disputed items), left his key, and returned to the residence only three times and only when Smith was present. Smith paid the full rent and all of the utilities at the residence after Dirmeyer vacated. In October 2012, Smith changed the locks, and a few months after Dirmeyer left, she terminated their joint checking account. When Dirmeyer turned himself in to law enforcement, he stated that he lived at the Walker Street address—the address of the apartment Dirmeyer obtained in November 2012. (State's Ex. 7). Under these facts and circumstances, a reasonable juror could have determined that Smith had a sole possessory interest in the residence, and therefore, that Dirmeyer trespassed when he entered the residence on January 14, 2013 for the purpose of committing domestic violence, and was therefore guilty of aggravated burglary.

{¶19} Dirmeyer's first and second assignments of error are, therefore, overruled.

{¶20} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., concurs.**

**ROGERS, J., DISSENTS.**

{¶21} I must respectfully dissent from the opinion of the majority.

{¶22} With respect to the first assignment of error, I would agree that the instruction given by the trial court could be correct in certain circumstances, such as where the title owner of property is a lessor but a tenant has a contractual right to possession and/or control of the property. However, I would find the instruction to have been improper under the circumstances of this case because Dirmeyer and Smith had equal legal rights to possession and control of the subject property by virtue of a valid written lease.

{¶23} As to the second assignment of error, the majority relies on the dicta of *State v. Lilly*, 87 Ohio St.3d 97 (1999). Dirmeyer is correct that the circumstances in *Lilly* are distinguishable from this case. In *Lilly*, the defendant had no interest whatsoever in any rental or lease agreement that would allow him

access to the property. *Id.* at 103. The defendant in *Lilly* was relying solely on his claim of marital access to the dwelling of his spouse created by statute. *Id.* at 100. However, a spouse that has residual legal rights to the marital home cannot be a trespasser. *State v. Conner*, 192 Ohio App.3d 166, 2011-Ohio-146, ¶ 26-28 (6th Dist.). In *Conner*, divorce proceedings had been initiated and an ex parte civil protection order had been granted to the wife against the husband. *Id.* at ¶ 27. The order stated that the wife had exclusive use of the marital home. *Id.* However, on appeal, the court found that, without the safeguard of a due process hearing excluding the husband from the premises, the husband "still had residual rights in the marital home and property within it[.]" *Id.* at ¶ 26-27. The court distinguished *Lilly*, where the estranged husband never obtained any legal rights to be in the wife's residence. *Id.* at ¶ 22. Nothing terminated the rights the husband had acquired in the marital home, nor, as the court stated, was the defendant on notice that he was not allowed in the home:

> [N]othing in the record indicates that appellant had actual notice that his presence in the marital home could constitute a criminal offense. No civil protection order or temporary restraining order existed that would have unequivocally provided notice to appellant of the possible consequences of entering the property or potential criminal penalties.

*Id.* at ¶ 28. As a result, the court found that the defendant could not have been a trespasser in the home. *Id.; see also O'Neal v. Bagley,* --- F.3d --- (6th Cir. 2013) (stating that being a tenant is "suggestive of an unqualified privilege to enter").

-11-

{¶24} Here, as in *Connor*, Dirmeyer maintained residual rights in the property. Without notice that he was not allowed on the property or other restrictions, he did not lose these rights. Further, Dirmeyer continued to have a legal responsibility for rents and maintenance of the property. It is illogical to hold one responsible for liabilities on a lease, but deny that same individual his or her right of access to the same property. To the extent that the majority interprets the reference in *Lilly* to R.C. 2911.21(F)(2) which defines "land or premises" as denying Dirmeyer a right of access, I would disagree. That issue was not before the court in *Lilly*, and I feel it is improper to try to extend the holding in *Lilly* to the circumstances of this case. Further, if the Supreme Court intended the result reached by the majority here, I would suggest that the Supreme Court was improperly reading into the statute language that does not exist.

{¶25} R.C. 2901.04(A) requires that criminal statutes "shall be strictly construed against the state, and liberally construed in favor of the accused."

{¶26} Further:

It is well accepted that the cornerstone of statutory construction and interpretation is legislative intention. In order to determine legislative intent it is a cardinal rule of statutory construction that a court must first look to the language of the statute itself. 'If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.' Moreover, it is well settled that to determine the intent of the General Assembly 'it is the duty of this court to give effect to the *words used* [in a statute], not to delete words used *or to insert words not used*.'

(Emphasis sic.) (Citations omitted.) *State v. Jordan*, 89 Ohio St.3d 488, 492 (2000). To be convicted of trespass, someone must, without privilege, enter the "land, building, structure, or place belonging to, controlled by, or in custody of another * * *." R.C. 2911.21(A)(1), (F)(2) As the apartment, by law, still belonged to Dirmeyer, he could not trespass on that land.

{¶27} Therefore, I would sustain both assignments of error and reverse Appellant's conviction for the offense of aggravated burglary.

**/jlr**