OPINION
{¶ 1} Defendant-appellant Terry L. Shells appeals from his conviction and sentence for aggravated robbery. On May 10, 2004, Shells was indicted on one count of aggravated robbery pursuant to R.C. § 2911.01(A)(1) . Shells filed a motion to suppress identification testimony on June 1, 2004. On July 21, 2004, Shells filed a supplemental motion to suppress evidence obtained through illegal search and seizure.
 {¶ 2} Following a jury trial on November 1 and 2, 2004, Shells was found guilty. On November 24, 2005, the trial court sentenced Shells to a five year prison term to be served concurrently with a six month sentence imposed in a separate case. Shells filed a timely notice of appeal on November 30, 2004.
 I {¶ 3} The incident that forms the basis for Shells' conviction and sentence occurred in the early morning hours on April 14, 2004. Shells, who testified that he was merely trying to flirt, approached a car containing three women in the parking lot of a night club in downtown Dayton, Ohio. Upon reaching the vehicle, Shells testified that he knocked on the window of the driver's side of the vehicle and asked for a cigarette or cigar from the occupants. While he was talking to them, his phone rang. When he pulled the phone from the breast pocket of his jacket, the women in the vehicle began screaming that Shells had a gun and that they were being robbed. Shells claimed that the person who called him at that time was his fiancee. Although he did not speak to her, Shells' fiancee testified at trial that the phone activated, and she heard women screaming in the background and Shells state that he was not trying to rob them. One of the women was able to exit the vehicle and run back into the club. Shells maintained that he became scared that he was going to be arrested for something he did not do, and he ran to his friend's vehicle in the same parking lot and waited to leave.
 {¶ 4} The three women in the vehicle provide a different version of events. They testified that after Shells came up to their car and got their attention, he pulled a semi-automatic handgun from inside his jacket, pointed it at the driver, and removed the keys from the ignition of the vehicle. After Shells allegedly informed the trio that he was robbing them, one of the passengers exited the vehicle and ran into the club. At this point, Shells ran to another vehicle and got inside.
 {¶ 5} A security guard from the club approached the car Shells was in and asked him to step out. The guard patted Shells down, but did not retrieve a gun. Shells then entered the vehicle of another friend, and they attempted to leave the club parking lot. By this time, however, police had been dispatched to the scene of the alleged robbery, and Shells was apprehended before he was able to leave the parking lot. While Shells was being detained by the police, the women identified Shells as the individual who had tried to rob them.
 {¶ 6} From his conviction and sentence, Shells appeals.
 II {¶ 7} Shells' first assignment is as follows:
 {¶ 8} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS UNRELIABLE IDENTIFICATION EVIDENCE."
 {¶ 9} In his first assignment of error, Shells contends that the trial court erred when it failed to sustain his motion to suppress identification testimony. Shells asserts that his identification by the three women was overly suggestive when the police escorted them to view him at the scene. Additionally, Shells attacks the reliability of the identification process the officers utilized. Shells' argument is without merit.
 {¶ 10} At trial, Shells did not dispute that he approached the vehicle occupied by the three women and that he did remove an object from his pocket. In light of this admission, the State argues that any error on the part of the trial court in declining to suppress the identification testimony against Shells was harmless error.
 {¶ 11} Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. Rules Crim. Proc., Rule 52(A). Pursuant to Crim. R. 52(A), any error will be deemed harmless if it did not affect an accused's substantial rights. Thus, under a Crim. R. 52(A) analysis, the conviction will be reversed unless the State can demonstrate that the defendant has suffered no prejudice as a result of the error. State v. Perry
(2004), 101 Ohio St.3d 118, 121, 802 N.E.2d 643, 2004-Ohio-297. "When a claim of harmless error is raised, the appellate court must read the record and decide the probable impact of the error on the mind of the average juror." State v. Young (1983),5 Ohio St.3d 221, 226, 450 N.E.2d 1143.
 {¶ 12} As previously stated, Shells' defense at trial focused on the assertion that he walked over to the vehicle to flirt with the women, not to rob them. Shells did not deny at any time that he was the individual who walked over to the vehicle and tapped on the window. There is no doubt that Shells was the person whose alleged actions were at issue during trial. Thus, if any error was committed by the trial court in overruling Shells' motion to suppress, it constitutes harmless error becuase the error did not contribute to the verdict. State v. Fears (1999),86 Ohio St.3d 329, 338-339, 715 N.E.2d 136, citing, Chapman v. California
(1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828.
 {¶ 13} Shells' first assignment of error is overruled.
 III {¶ 14} Shells' second assignment is as follows:
 {¶ 15} "APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 16} In his second assignment of error, Shells contends that he received ineffective assistance of counsel at the trial level. In support of this assertion, Shells makes the following arguments: 1) counsel's failure to comply with the rules of reciprocal discovery which "significantly inhibited" Shells' defense by resulting in the exclusion of potentially exculpatory evidence; 2) counsel's failure to adequately prepare for trial which resulted in a defense witness' impeachment with respect to phone records; 3) counsel's failure to object to leading questions by the State as well as the failure to object to the State's use of a map drawn by one of the State's witnesses; 4) counsel's failure to object to leading questions requesting speculative testimony; and 5) counsel's failure to properly cross-examine a State's witness with respect to her alcohol consumption.
 {¶ 17} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, citing State v.Lytle (1976), 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910,98 S.Ct. 3135.
 {¶ 18} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.
Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id.
 {¶ 19} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. Bradley, supra, at 143. A reasonable probability is a probability sufficient to undermine confidence in the outcome.Strickland, supra, at 694.
 {¶ 20} The arguments Shells submitted with respect to his claim for ineffective assistance of counsel will be discussed in the sequence presented in his brief.
 {¶ 21} "A. FAILURE TO COMPLY WITH RECIPROCAL DISCOVERY
 {¶ 22} Initially, Shells argues that his defense counsel provided ineffective assistance of counsel when he failed to comply with reciprocal discovery which caused the exclusion from evidence of Shells' mobile phone. Shells contends that the exclusion of his mobile phone "significantly inhibited" his claim that the women in the vehicle mistook the phone for a gun when he pulled it out of his jacket.
 {¶ 23} A debatable decision involving trial tactics generally does not constitute a deprivation of effective counsel. State v.Phillips (1995), 74 Ohio St.3d 72, 656 N.E.2d 643,1995-Ohio-171. In State v. Clayton (1980), 620 Ohio St.2d 645, the Ohio Supreme Court discussed an attorney's choice of trial strategy and stated the following:
 {¶ 24} "* * * the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client."
 {¶ 25} Shells' defense was that the three women merely mistook his cell phone for a gun. However, defense counsel's failure to enter the phone itself into discovery was not so damaging to Shells' case that the result of the trial would have been different. Shells' fiancee was allowed to testify at trial concerning the phone and was allowed to describe the appearance of the phone to the jury. She even brought the phone with her and placed it on the witness stand while she testified in full view of the jury. Although defense counsel's failure to include the mobile phone in reciprocal discovery resulted in its exclusion from admission into evidence, under the facts before us, we cannot say that his omission rises to the level of ineffective assistance.
 {¶ 26} B. FAILURE TO ADEQUATELY PREPARE FOR TRIAL WITH RESPECT TO PHONE RECORDS
 {¶ 27} Shells next argues that he was provided ineffective assistance in light of his counsel's failure to thoroughly investigate appellant's and appellant's fiancee's phone records. During the alleged robbery, Shells' mobile phone records indicate that he received a call from his fiancee's mobile phone which lasted only one-second and went directly to voice mail. Shells contends that had defense counsel been aware that the phone call lasted only one-second, he could have proposed an alternate explanation and minimized the damage done to his client's case. During trial, the State argued that because the phone call from Shells' fiancee only lasted one-second and went directly to voice mail, she could not have heard anything that Shells or the three women said while the alleged robbery was taking place, the implication being that she was lying at trial to cover for Shells.
 {¶ 28} Shells' assertion that defense counsel could have been better prepared for the introduction of the phone records does not rise to the level of ineffective assistance of counsel. Shells' counsel attempted to mitigate the damage done by the phone records by presenting evidence that Shells' fiancee tried to also call him on a landline, rather than another mobile phone. Defense counsel theorized that a call from a landline would not have shown up on Shells' phone records. The jury apparently chose to believe the State's version of events.
 {¶ 29} C. FAILURE TO OBJECT TO LEADING QUESTIONS AND EVIDENCE
 {¶ 30} In this section, Shells contends that he received ineffective assistance of counsel because the State was allowed to use a diagram of the parking lot to assist the State's witnesses in their testimony. The diagram was drawn by one of the first State's witnesses to take the stand and was later utilized by successive witnesses. Shells argues that defense should have objected to the use of the diagram by the later witnesses. Shells also asserts that defense counsel's performance was deficient for not objecting to leading questions asked by the State pertaining to the diagram.
 {¶ 31} This argument has no merit because defense counsel's decision not to continually object could easily be construed as trial strategy. Defense counsel did object to the introduction of the diagram into evidence. Additionally, defense counsel objected to the State's leading questions with respect to the diagram, and the objection was sustained. Limiting the number of objections to the use of a particular piece of evidence at trial is clearly a discretionary decision available to trial counsel. Shells' argument is without merit.
 {¶ 32} D. FAILURE TO OBJECT TO LEADING QUESTIONS AND SPECULATIVE TESTIMONY
 {¶ 33} Shells next argues that he was rendered ineffective assistance when defense counsel failed to object to leading questions by the State seeking to elicit speculative testimony from the robbery victims. Shells' assertion is without merit because a layperson is allowed to testify about his or her opinions or inferences where those opinions or inferences are "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Evid. R. 701.
 {¶ 34} Shells mistakenly argues that defense counsel should have objected to the State's questions which pertained to what the witnesses thought Shells was trying to accomplish when he walked over to their car. The women generally testified that his speech and physical behavior indicated that he was trying to rob them. This testimony clearly falls within the purview of Evid. R. 701. Moreover, Defense counsel's failure to object to leading questions concerning the speculative testimony could have been a trial tactic and, thus, does not constitute ineffective assistance.
 {¶ 35} E. FAILURE TO PROPERLY CROSS-EXAMINE STATE'S WITNESS
 {¶ 36} Lastly, Shells argues that he was provided ineffective assistance when defense counsel failed to cross-examine one of the State's witnesses with respect to the amount of alcohol she had consumed on the night of the robbery. Shells argues that the witness, Soraya Benjamin, misrepresented the amount of alcohol she consumed that night and that defense counsel missed an opportunity to attack her credibility in the presence of the jury.
 {¶ 37} Trial counsel's decision to cross-examine a witness and the extent of such cross-examination are tactical matters.State v. Flors (1987), 38 Ohio App.3d 133, 139, 528 N.E.2d 950. Thus, decisions regarding cross-examination are within trial counsel's discretion and cannot form the basis for a claim of ineffective assistance of counsel. Id. (concluding that the extent of trial counsel's cross-examination is a matter of trial strategy and does not constitute ineffective assistance of counsel).
 {¶ 38} Defense counsel's line of questioning with respect to the cross-examination of Benjamin was fully within his discretion. His decision to not question her concerning the alleged discrepancy between the amount of money she spent and the amount of alcohol she admitted consuming was a tactical consideration that does not rise to the level of ineffective assistance.
 {¶ 39} Shells' second assignment of error is overruled.
 IV {¶ 40} Shells' third assignment is as follows:
 {¶ 41} "APPELLANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL THROUGH THE TRIAL COURT'S ERRONEOUS RULINGS."
 {¶ 42} In his third assignment of error, Shells contends that the trial court erred when it allowed the introduction of the diagram of the parking lot drawn by one of the State's witnesses into evidence. Shells also argues that he was denied due process when the trial court allowed the introduction of incomplete phone records into evidence at trial. The trial transcript, however, reflects that the phone records were not ultimately admitted into evidence. Thus, this portion of Shells' assigned error is moot and need not be addressed.
 {¶ 43} As to the diagram, we note that the trial court is vested with broad discretion concerning the admissibility of evidence. State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804. Thus, we will reverse the trial court's determination only where the appellant demonstrates that the court has abused that discretion. "The term discretion involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." State v. Jenkins (1984),15 Ohio St.3d 164, 222, 473 N.E.2d 264, 313. In order to constitute an abuse of discretion, the challenged ruling must be "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v. Fairview Gen. Hosp.
(1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3.
 {¶ 44} Shells asserts that under Evid. R. 403, the diagram of the parking lot was inadmissible because any probative value the exhibit possessed was substantially outweighed by the danger of unfair prejudice to the jury. Shells also asserts that the diagram was used to lead the testimony of the witnesses.
 {¶ 45} During trial, all of the witnesses were separated. As a result, they were arguably unaware that they were using the same demonstrative exhibit in their testimony. Thus, Shells' assertion that the diagram was somehow leading each successive witnesses' testimony is without merit.
 {¶ 46} Lastly, other than arguing that the diagram was inadmissible under Evid. R. 403, Shells provides us with no substantive basis to support that conclusion. The diagram of the parking lot purported to demonstrate to the jury the location of the witnesses and the path taken by Shells after the alleged robbery occurred. The contents of the diagram were not in dispute during trial. Shells even referred to the diagram during a portion of his testimony when testifying as to the location of a certain vehicle in the parking lot. Simply put, the diagram was utilized as a demonstrative device to aid the witnesses in describing to the jury the area where robbery took place. Shells cannot demonstrate any prejudice arising from the diagram's admission into evidence.
 {¶ 47} Shells' third assignment of error is overruled.
 V {¶ 48} Shells' fourth assignment is as follows:
 {¶ 49} "APPELLANT WAS DEPRIVED OF A FAIR TRIAL THROUGH PROSECUTORIAL MISCONDUCT."
 {¶ 50} In his fourth and final assignment of error, Shells contends that he was severely prejudiced by certain comments made by the prosecutor in the presence of the jury. Shells argues that the prosecutor was unfairly appealing to the emotions of the jurors when she requested permission from the trial court to take a tissue outside to a State's witness who was upset. Shells also argues that the prosecutor improperly attempted to impugn his credibility when he took the witness stand in the following exchange:
 {¶ 51} "Q: You've had the opportunity to sit in the courtroom and listen to everybody else's testimony, haven't you?"
 {¶ 52} "A: Yes."
 {¶ 53} "Q: And that's an opportunity that the other witnesses didn't have, right?"
 {¶ 54} "A: Yes."
 {¶ 55} Defense counsel did not object to any of the above questions asked by the prosecutor during trial. Thus, we must review this entire assignment under a plain error analysis. Crim. R. 52(B) allows a reviewing court to consider errors committed at trial, upon which appellant did not object, only if such errors affected the substantial rights of the appellant. A reviewing court should use the utmost caution in taking notice of plain error and should do so only if it is clear that, but for the error, the result in the trial court would have been different.State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph 2 of syllabus. Notice of plain error should be taken only in exceptional circumstances and only to prevent a manifest miscarriage of justice. Id., paragraph 3 of syllabus.
 {¶ 56} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. State v. Smith
(1984), 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883. The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940.
 {¶ 57} With respect to the prosecutor's request that she be permitted to provide a tissue to one of the State's witnesses, it is apparent from the record that the prosecutor directed the question solely to the judge in a low tone, outside the hearing of the jury. Shells is, therefore, unable to demonstrate that this action by the prosecutor resulted in prejudice to the appellant by inflaming the passions of the jury.
 {¶ 58} Shells' remaining assertion that he was unfairly prejudiced by the prosecutor's questions concerning his continued presence in the courtroom do not constitute prosecutorial misconduct that would warrant a reversal in this matter. While the prosecutor's questions were arguably improper, Shells makes no attempt to demonstrate how these questions were so prejudicial such that the outcome of the case would have been altered. The prosecutor's actions with respect to either instance noted above clearly do not rise to the level of plain error.
 {¶ 59} Shells' final assignment of error is overruled.
 {¶ 60} The judgment of the trial court is affirmed.
Grady, J. and Young, J., concur.
(Hon. Frederick N. Young sitting by assignment of the Chief Justice of the Supreme Court of Ohio).