OPINION
{¶ 1} Defendant-Appellant, Angela I. Hamblett-Catt, appeals a judgment of the Van Wert Municipal Court, sentencing her upon an assault conviction. On appeal, Hamblett-Catt asserts the trial court's verdict is against the manifest weight of the evidence. Finding that the verdict is not against the manifest weight of the evidence, we affirm the judgment of the trial court.
{¶ 2} On the night of January 22, 2005, the Van Wert Sheriff's Department was dispatched to 12052 Lincoln Highway, Apartment #1, in Van Wert, Ohio, following a 911 call that was placed by Hamblett-Catt. The officers arrived at the apartment at approximately 12:04 a.m. At that time, Hamblett-Catt and Andrew Ruposky were present and awake. Brenda Ruposky was also in the apartment; however, she was sleeping in the bedroom.
{¶ 3} During their investigation, Deputy Jeffrey Medford talked with Andrew and Deputy Tom Riggenbach spoke with Hamblett-Catt. Both Andrew and Hamblett-Catt told the deputies that Andrew, Brenda and Hamblett-Catt had all been out drinking at a local bar. According to Deputy Medford, Andrew told him that, when they got back to the apartment Brenda had passed out in the bedroom, that Hamblett-Catt went into the bedroom, that he heard wrestling in the bed, that he went to check on Brenda and Hamblett-Catt and that, when he walked into the bedroom, Hamblett-Catt was on top of Brenda punching her. Additionally, Deputy Medford stated that Andrew told him that when he was trying to pull Hamblett-Catt off of Brenda, Hamblett-Catt scratched his face and bit his arm. During this investigation, Andrew told Deputy Medford that he did not want to file charges against Hamblett-Catt, but that he would like medical attention for his injuries. However, no pictures were taken at that time.
{¶ 4} During this initial response, Deputy Riggenbach spoke with Hamblett-Catt. According to Deputy Riggenbach, Hamblett-Catt stated that while the three were at the bar, Andrew and Brenda got into a fight and that the fight got physical when the three returned to the apartment. Deputy Riggenbach went on to state that Hamblett-Catt told him that she was trying to help Brenda into her pajamas when Brenda vomited. Hamblett-Catt also told him that she was trying to help Brenda, when Andrew came into the room and pulled her out of the bedroom by her hair and that she did scratch and bite him as she was trying to get away from him. Hamblett-Catt then told Deputy Riggenbach that she went next door and called 911 from a neighbor's apartment.
{¶ 5} Following the initial incident, no charges were filed and Andrew was sent to the emergency room for his injuries. At approximately 3:30 a.m., the deputies were called back out to the apartment. This call was made by Brenda, and when the deputies arrived they only spoke with Brenda. According to Deputy Medford, Brenda told him that she was in bed when Hamblett-Catt came in and attacked her and that Hamblett-Catt then left the apartment. During this second investigation, Brenda told the police that she did want to file charges, and the police took photos of both her and Andrew's injuries.
{¶ 6} After determining that charges were going to be filed, Deputy Riggenbach was able to locate Hamblett-Catt at the hospital, where she was arrested. On January 24, 2005, Hamblett-Catt was charged with the assault of Brenda Ruposky in violation of R.C. 2903.13(A), a misdemeanor of the first degree.
{¶ 7} In March of 2005, a bench trial was held on assault charge. At trial, Deputies Medford and Riggenbach testified to the above accounts of the incidents. Additionally, Deputy Riggenbach testified that, during the initial investigation, he did not believe Hamblett-Catt's story that she had been assaulted, because she had no marks or injuries on her body.
{¶ 8} Brenda also testified that her, Andrew and Hamblett-Catt had been out drinking on the night of January 22, 2005. Additionally, Brenda testified that she was a diabetic, that she was not supposed to drink and that she was very intoxicated that night. She also stated that after coming home from the bar, she felt sick and passed out in her bedroom. At that point, Brenda stated that Hamblett-Catt came into the room and was trying to help her put her pajamas on, but that she told Hamblett-Catt to leave her alone. Brenda then testified that she did vomit. She then stated that Hamblett-Catt would not leave hear alone and that, while she did not remember exactly what happened, she knew that Hamblett-Catt was on top of her striking her and kicking her at some point. Finally, Brenda stated that she did not have any contact with the law enforcement after the first incident, but that she did call them the second time and that she did ask them to press charges against Hamblett-Catt.
{¶ 9} The State also introduced photographs of Brenda and Andrew, which showed their injuries. The photographs were taken on the night of the incident, during the second investigation.
{¶ 10} Finally, Hamblett-Catt testified on her own behalf. According to Hamblett-Catt, the three went to the bar, where Brenda and Andrew got into a fight. Hamblett-Catt also stated that once they got back to the apartment, the fight got physical with Andrew kicking and punching Brenda in the parking lot. Hamblett-Catt testified that once in the apartment, Brenda accused her of having an affair with Andrew and that Brenda grabbed her at that point. Hamblett-Catt stated that she was trying to defend herself against Brenda, when they fell down and that she may have hit Brenda while she was trying to get away from her. Hamblett-Catt stated it was at that point that Andrew came into the room and began to physically assault her as well. She went on to state that she then went to the neighbors and called 911.
{¶ 11} Hamblett-Catt also testified that after the initial police investigation, she stayed at the apartment until Andrew came home from the hospital. She stated that when Andrew returned from the hospital, he would not give her the keys to her car and that she walked to the police station to report her car stolen. HamblettC-att stated that she did make a report that her car was stolen, but that the report was not filed because the police were able to get her car keys back.
{¶ 12} Upon the presentation of the evidence, the trial court found Hamblett-Catt guilty of assault and sentenced her upon that conviction. It is from this judgment Hamblett-Catt appeals, presenting the following assignment of error for our review.
The Trial Court's finding that the Defendant was guilty of assault was against the manifest weight of the evidence.
{¶ 13} In the sole assignment of error, Hamblett-Catt asserts that the trial court's finding of guilt is against the manifest weight of the evidence presented. Specifically, Hamblett-Catt argues that the State failed to present sufficient evidence that Hamblett-Catt knowingly caused or attempted to cause physical harm to Brenda. We disagree.
{¶ 14} While Hamblett-Catt did not specifically raise sufficiency of the evidence as an assignment of error, she did discuss it in her assignment of error. Because "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different," we will address each separately. State v. Thompkins (1997), 78 Ohio St.3d 380, para. two of the syllabus.
{¶ 15} We first address the claim that the evidence was insufficient to support the finding that she was guilty beyond a reasonable doubt. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, para. two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89.
{¶ 16} R.C. 2913.13(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Here, Brenda clearly testified that Hamblett-Catt did strike her. Accordingly, when viewed in the light most favorable to the prosecution, a reasonable trier of fact could have found all of the elements of assault.
{¶ 17} Having found that the State did present sufficient evidence, we will now consider whether the conviction is against the manifest weight of that evidence. When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence," the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
{¶ 18} Upon review of the record, we cannot say that in weighing all of the evidence we find that "the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. As noted above, Brenda did testify that Hamblett-Catt struck her. While Hamblett-Catt correctly points out that during her testimony Brenda did have trouble remembering the things that happened that night because she was intoxicated, we cannot say the evidence weights so heavily against conviction that the trial court's judgment must be reversed.
{¶ 19} Essentially, this case comes down to the credibility of the witnesses. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228. The trial court had the opportunity to personally observe the witnesses in this case and was in a better position to evaluate their believability. While there may be good reason to doubt the credibility of each of the witnesses in this case, after a review of the record, we cannot say that the trier of fact clearly lost its way in weighing credibility. Accordingly, the sole assignment of error is overruled.
{¶ 20} Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
BRYANT and SHAW, JJ., concur.