[Cite as *State v. Galbraith*, 2012-Ohio-5231.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 9-11-61

      v.

MICHAEL T. GALBRAITH,            O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 11-CR-231

**Judgment Affirmed**

**Date of Decision: November 13, 2012**

APPEARANCES:

    *Kevin P. Collins* for Appellant

    *Brent Yager* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Michael Galbraith, appeals the judgment of the Court of Common Pleas of Marion County convicting him of assault on a corrections officer. On appeal, Galbraith claims that the trial court erred by: (1) handing down a conviction that was against the manifest weight of the evidence; (2) admitting testimony regarding his intent; (3) excluding testimony regarding his injuries; (4) refusing to instruct the jurors on the defense of voluntary intoxication; and (5) failing to provide a fair trial due to the existence of cumulative error. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On May 26, 2011, the Grand Jury of Marion County indicted Galbraith with one count of assault on a corrections officer in violation of R.C. 2903.13(A), a felony of the fifth degree. The indictment arose from a May 10, 2011 incident in which Galbraith allegedly kicked Sergeant Michael King, a corrections officer, while being booked at the Multi-County Correctional Facility in Marion, Ohio ("Multi-County"). Officer Andrew Isom of the Marion Police Department had arrested Galbraith about a half an hour before the incident for disorderly conduct, a misdemeanor offense, and had transported Galbraith to Multi-County.

{¶3} A jury trial commenced on October 11, 2011 and ended the next day. The following relevant evidence was presented at trial.

{¶4} Sergeant King testified that Galbraith was "highly intoxicated," "abusive," and uncooperative when he first arrived at Multi-County with Officer Isom. Trial Tr., p. 90. Due to Galbraith's behavior, Sergeant King went to the booking counter to assist the corrections officers in patting Galbraith down. Sergeant King then testified as follows regarding his interaction with Galbraith:

> I asked [Galbraith] if he was gonna cooperate and he just looked at me and told me "f[---] you." And I said, "do you have anything in your pockets that's gonna poke, stick me or my officer [during the pat-down search]?" He said, "well, f[------] find out yourself." * * * He would not let us pat him down. He tried turning on us a couple times at the counter so we secured him again, gave him another chance to let us pat him down and everything and just – "I'll f[---] you guys up." *Id*. at 93-94.

{¶5} Since Galbraith continued to be uncooperative, the officers decided to take him to the ground in an attempt to subdue him. Sergeant King described the incident as follows:

> A: He [Galbraith] – I was standing to his left straddling his left leg, securing his left arm, and just as we were getting ready to take him to the ground, he lifted his leg up, he tried to take out my left knee.
>
> Q: Did he actually strike you with his left foot?
>
> A: Yes.
>
> Q: I guess a horse kick, would that be a good description?
>
> A: Yes. *Id*. at 94.

After Galbraith's kick, Sergeant King and the other corrections officers threw Galbraith to the ground and subdued him. During cross-examination, the record reflects that Sergeant King did a physical demonstration of Galbraith's kicking motion. On redirect examination, Sergeant King testified that he had "[n]o doubt whatsoever" that Galbraith "was trying to take out [his] knee." *Id*. at 121.

{¶6} During Sergeant King's testimony, the State played the video of the incident, which was admitted as Joint Exhibit 1. When the kick occurred, Officer Isom was standing in a position that obstructed the camera's view. However, the video shows Galbraith picking his leg up before delivering the kick described by Sergeant King and it shows Sergeant King reacting to the kick. The video also shows the resulting scuffle in which the corrections officers subdued Galbraith.

{¶7} The State later called Nurse Mary Sprang, who is an in-house licensed practical nurse ("LPN") at Multi-County. On cross-examination, Galbraith's trial counsel attempted to elicit testimony regarding the existence and treatment of Galbraith's knee injury:

> Q:  After [Galbraith's] second refusal [of medical treatment] you then checked Mr. Galbraith the next day, didn't you?
>
> A:  No, the other nurse did, yeah, on the day shift, and she contacted the doctor.
>
> Q:  Did you ever x-ray Mr. – x-ray Mr. Galbraith to see that his knee was fractured, didn't you?
>
> * * *

[Prosecutor]: Judge, I'll object. I don't believe she is in a position to do that.

The Court:    Ask her what she did to treat this gentleman.

Q:    What did you do to treat Mr. Galbraith?

A:    I don't know how to answer you, but the other nurse called the doctor – can I just tell you what happened, is that okay?

* * *

The Court:    Hang on a minute. What did you do to treat this gentleman during this period of time? Your treatment of him, what did you do with him?

A:    When I got the x-ray results back I notified the doctor.

The Court:    From whom?

A:    I didn't get the order from the x-ray, Judge.

The Court:    All right, that's your answer.

Q:    What did the x-ray results indicate?

[Prosecutor]: Object Judge, it calls for a hearsay answer.

The Court:    That's sustained.

Q:    You notified [a police officer] that Mr. Galbraith had a fractured knee and needed to go to the Marion General Hospital, didn't you?

A:    No –

[Prosecutor]: Judge, once again I'll object.

The Court:    Hold it. Approach. *Id*. at 159-61.

{¶8} At this point, the trial court judge excused the jury and admonished Galbraith's trial counsel for pursuing this line of questioning in a manner that was inconsistent with the Rules of Evidence. When the jury returned, Galbraith's trial counsel again explored the line of questioning regarding Galbraith's fractured knee:

> Q: What did you observe when Mr. Galbraith came back from the hospital, Nurse Sprang?
>
> A: When he came back from the hospital?
>
> Q: From Marion General?
>
> A: He had an immobilizer on –
>
> [Prosecutor]: Judge, I'll object. I'm not sure how it's relevant.
>
> The Court: Sustained. *Id*. at 162-63.

Galbraith's trial counsel put a proffer on the record as to what Nurse Sprang's testimony would cover:

> For the record I would like to proffer that Nurse Sprang would testify that Mr. Galbraith was given a portable x-ray at Multi-County Jail which indicated that he had a fracture of his knee the next morning. The next evening she ordered him sent to Marion General for the knee fracture and that they also indicated his knee was – his kneecap was fractured. At that time she would have followed the doctor's orders, and she would indicate such in her nurse's notes. And she did tell me that she did do an x-ray at the correctional institute and then an x-ray at Marion General and Morrow County Hospitals. All indicated a fracture of the kneecap. *Id*. at 189-90.

{¶9} Officer Isom then testified that on the date of the incident he was on patrol and responded to an emergency call in which the caller said that a drunken man had passed out in her neighbor's garden. When Officer Isom arrived in the area, he discovered Galbraith walking in the street. He identified Galbraith as intoxicated, arrested him for disorderly conduct, and took him to Multi-County.

Officer Isom was present throughout the incident in which Galbraith allegedly kicked Sergeant King and he testified as follows:

> A: As I'm walking around the [booking] counter I see [Galbraith] starting coming off the counter like he's trying to swing around on [Sergeant King]. * * * [S]o when I came around the corner I saw him try to turn and then I saw [Galbraith] pick up his left leg and kick back toward Sergeant King's knee and I kind of saw Sergeant King's knee kind of go out from him * * *.
>
> Q: So you saw [Galbraith] rear up and kick at Sergeant King?
>
> A: Saw him lift his leg up and kick back. *Id*. at 170.

On cross-examination, Officer Isom did a physical demonstration of Galbraith's kicking motion that was consistent with Sergeant King's earlier demonstration. Then, on redirect examination, Officer Isom testified that Galbraith was "trying to take out [Sergeant King's] knee" and that he was attempting "to cause injury" to Sergeant King. *Id*. at 187.

{¶10} During the pendency of the trial, Galbraith filed proposed jury instructions on October 12, 2011. The proposal included a request for a voluntary intoxication instruction that read "[i]ntoxication is not an excuse for an offense.

However, evidence of intoxication has been admitted for the purpose of showing that the defendant was so intoxicated that he was incapable of performing the act with which he has been charged." (Docket No. 42, p. 2). The trial court denied the issuance of such an instruction because the evidence did not suggest that Galbraith was physically incapable of assaulting a corrections officer as alleged.

{¶11} On October 12, 2011, the jury returned a guilty verdict against Galbraith. The matter then proceeded to sentencing with a hearing on December 12, 2011 for that purpose. On December 14, 2011, the trial court issued a judgment entry of sentencing that ordered Galbraith to serve 11 months in prison.

{¶12} Galbraith filed this timely appeal, presenting the following assignments of error for our review. Before listing those assignments of error, we preliminarily note that the State did not file an appellate brief. App.R. 18(C) gives us the discretion to "accept [Galbraith's] statement of facts and issues as correct and reverse the judgment if [Galbraith's] brief reasonably appears to sustain such action."

### Assignment of Error No. I

**DEFENDANT-APPELLANT'S CONVICTION FOR ASSAULT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. II*

**THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING OFFICER ISOM TO TESTIFY ABOUT DEFENDANT-APPELLANT'S INTENT.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY EXCLUDING TESTIMONY OF NURSE SPRANG.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY REFUSING TO GIVE THE JURY INSTRUCTION REGARDING INTOXICATION.**

*Assignment of Error No. V*

**THE COMBINATION OF THE AFOREMENTIONED ERRORS ARE SUFFICIENT TO CALL INTO QUESTION THE VALIDITY OF THE VERDICT, PREVENTING THE APPELLANT FROM OBTAINING THE FAIR TRIAL GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE U.S. CONSTITUTION AS MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT, AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION.**

{¶13} Due to the nature of the assignments of error, we address them out of order.

*Assignment of Error No. II*

{¶14} In his second assignment of error, Galbraith contends that the trial court committed plain error in allowing Officer Isom to testify about Galbraith's intent in attempting to kick the victim. We disagree.

{¶15} Before turning to the merits of Galbraith's contention, there are two deficiencies in this assignment of error that need to be resolved. First, we note that Galbraith has failed to provide legal authorities to support his position that Officer Isom was unable to testify regarding Galbraith's intent in kicking Sergeant King. This is violative of App.R. 16(A)(7), which requires that the appellant provide "[a]n argument containing [his] contention * * * with citations to the authorities * * * on which appellant relies." Although App.R. 12(A)(2) gives us the authority to consequently disregard this assignment of error, we will proceed to address it in the interests of justice. *See State v. Thomas*, 3d Dist. No. 10-10-17, 2011-Ohio-4337, ¶ 25.

{¶16} Second, this assignment of error only complains of Officer Isom's testimony regarding Galbraith's intent in kicking Sergeant King's leg. But, a review of the record reveals that Sergeant King likewise testified that he had "no doubt whatsoever" that Galbraith was "trying to take out [his] knee." Trial Tr., p. 121. Due to the concordant nature of Sergeant King's and Officer Isom's

testimonies, we treat this assignment of error as covering both officers' descriptions of Galbraith's intent.

*Plain Error Standard*

**{¶17}** Galbraith did not object to the admission of Officer Isom's or Sergeant King's testimony at the trial court level. Consequently, our review is limited to the existence of plain error in the trial court proceedings. *See State v. Balo*, 3d Dist. No. 1-10-48, 2011-Ohio-3341, ¶ 48. To have plain error under Crim.R. 52(B), there must be an error that both constitutes an "obvious" defect in the trial proceedings and affects "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 436 (1997); *see State v. Johnson*, 3d Dist. No. 2-98-39 (June 30, 1999).

*Opinion Testimony*

**{¶18}** Neither Officer Isom nor Sergeant King was offered as an expert witness. Accordingly, we consider whether their testimony was permissible as opinion testimony by lay witnesses. Evid.R. 701 controls lay opinion testimony and it limits such testimony to "those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear

understanding of the witness' testimony or the determination of a fact in issue." In *State v. Kehoe*, 133 Ohio App.3d 591 (12th Dist. 1999), the defendant complained of the police officer's opinion testimony that his actions evinced an intent to kill. There, the court rejected the defendant's argument and affirmed the admission of the testimony because it was drawn from the officer's personal observations of the defendant's conduct. *Id*. at 612. Other courts have reached the same finding and have allowed lay opinion testimony regarding a criminal defendant's intent, provided that the testimony is based on the witness's personal observations and inferences. *See State v. Shells*, 2d Dist. No. 20802, 2005-Ohio-5787, ¶ 34 (finding that victim's testimony regarding the defendant's intent to rob was properly admitted); *City of Ashtabula v. Smith*, 11th Dist. No. 2000-A-0029 (May 18, 2001) (finding that witness's testimony as to the defendant's intent to assault was properly admitted); *State v. Crenshaw*, 8th Dist. No. 60671 (June 4, 1992) (finding that police officer could testify regarding the defendant's intent to distribute drugs based on his discoveries during investigation).

{¶19} This matter falls within the *Kehoe* ambit of cases. Officer Isom and Sergeant King provided thorough testimony regarding their observations of Galbraith both before and after the kicking. They personally endured Galbraith's verbal abuse, which included various threats of harm to them, and they were present throughout the incident in which he kicked Sergeant King. Based on these

observations, Officer Isom and Sergeant King were able to rationally infer Galbraith's intent in kicking Sergeant King. Consequently, we find that their testimony regarding Galbraith's intent is properly admissible as lay opinion testimony.

{¶20} Even if Officer Isom's and Sergeant King's testimony was inadmissible opinion testimony, its erroneous admission would still be harmless. The testimony adduced at trial is replete with references to Galbraith's combativeness during the booking process and his threats of violence towards the officers. The jury also received testimony from Officer Isom and Sergeant King regarding Galbraith's kicking and they partially saw the incident in the video. Based on the evidence of Galbraith's conduct, the jury could still find the existence of intent on Galbraith's part to cause physical harm without considering Officer Isom's and Sergeant King's testimony.

{¶21} Accordingly, we overrule Galbraith's second assignment of error.

*Assignment of Error No. III*

{¶22} In his third assignment of error, Galbraith argues that the trial court erroneously excluded Nurse Sprang's testimony regarding his fractured knee as irrelevant. We disagree.

{¶23} Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more or less probable than it would be without the evidence." The admission or exclusion of evidence under Evid.R. 401 is within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). Consequently, we only disturb the trial court's decision to exclude evidence as irrelevant upon a showing of abuse of discretion. *State v. Blakenship*, 102 Ohio App.3d 534, 549 (12th Dist. 1995). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 16-18, citing *Black's Law Dictionary* 11 (8th Ed.2004). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Nagle*, 11th Dist. No. 99-L-089 (June 16, 2000), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶24}** Here, Galbraith's trial counsel proffered that Nurse Sprang would merely testify that she took an x-ray of Galbraith's knee on the morning of May 11, 2011 and that the x-ray indicated Galbraith had a fractured knee. Neither this proffer nor the line of questioning surrounding Galbraith's injuries contains evidence of which knee was fractured, when the knee was fractured, or how the knee was fractured. Without this information, we are unable to assess the probative value of the evidence. Consequently, we are unable to find that it was

an abuse of discretion for the trial court to exclude Nurse Sprang's testimony as irrelevant.

{¶25} Further, even if the trial court should have admitted Nurse Sprang's testimony, its exclusion would only constitute harmless error. Both Officer Isom and Sergeant King testified that Galbraith deliberately kicked Sergeant King and the video of the incident is consistent with such a kick. The admission of Nurse Sprang's testimony regarding Galbraith's knee injury would not reduce the import of this evidence or affect the outcome of the trial.

{¶26} Accordingly, we overrule Galbraith's third assignment of error.

*Assignment of Error No. IV*

{¶27} In his fourth assignment of error, Galbraith suggests that the trial court's refusal to instruct the jury on the defense of voluntary intoxication is reversible error. We disagree.

{¶28} We review a trial court's refusal to give a jury instruction for abuse of discretion. *State v. Orians*, 179 Ohio App.3d 701, 2008-Ohio-6185, ¶ 10. In performing this review, we are mindful that "[a] strong presumption exists in favor of the propriety of jury instructions." *Schnipke v. Safe-Turf Installation Group, L.L.C.*, 190 Ohio App.3d 89, 2010-Ohio-4173, ¶ 30. "It is well-settled that a criminal defendant is entitled to a complete and accurate jury instruction on all issues raised by the evidence." *State v. Wilson*, 3d Dist. No. 14-06-19, 2006-Ohio-

6930, ¶ 43; *see also Schnipke* at ¶ 30 ("Generally, the trial court should give requested jury instructions if they are correct statements of the law applicable to the facts in the case."). A failure to provide such a jury instruction amounts to prejudicial error. *State v. Scott*, 26 Ohio St.3d 92, 101 (1986). In assessing whether a trial court's refusal to give a jury instruction was proper, we determine if there was sufficient evidence in the record to allow "reasonable minds [to] reach the conclusion sought by the instruction." *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991).

{¶29} Ohio recognizes the defense of voluntary intoxication in only one circumstance. Under R.C. 2901.21(C), "[e]vidence that a person was voluntarily intoxicated may be admissible to show whether or not the person was physically capable of performing the act with which the person is charged." For the defense to apply, the defendant's state of intoxication must rise to the "level of unconsciousness." *State v. McClaskey*, 6th Dist. No. 05AP-882, 2006-Ohio-6646, ¶ 11. In *McClaskey*, the court affirmed the trial court's denial of a voluntary intoxication instruction because the record showed that the defendant was capable of talking with the arresting police officers and that his statements showed an ability to recall previous events with the officers. *Id*. at ¶ 12-13; *see also State v. Townsend*, 7th Dist. No. 04 MA 110, 2005-Ohio-6945, ¶ 72 (affirming denial of

voluntary intoxication instruction where the defendant was capable of driving and obtaining weapons despite his level of intoxication).

{¶30} Here, the evidence presented during trial did not establish that Galbraith was intoxicated to the point of unconsciousness, which compels us to reach the same finding as the *McClaskey* and *Townsend* courts. Galbraith was capable of walking into the correctional facility, standing at the booking desk, and shouting threatening remarks to the corrections officers and Officer Isom. Further, the video of the incident showed Galbraith lifting his left leg. Based on these actions, we find that Galbraith was physically capable of kicking Sergeant King and that there was no evidence in the record to support the issuance of a voluntary intoxication instruction. Consequently, the trial court did not commit an abuse of discretion in denying such an instruction.

{¶31} Accordingly, we overrule Galbraith's fourth assignment of error.

*Assignment of Error No. I*

{¶32} In his first assignment of error, Galbraith argues that his conviction for assault of a police officer is contrary to the manifest weight of the evidence. Specifically, Galbraith claims that the evidence presented at trial established the following items, none of which supports a guilty verdict: (1) that, as a result of voluntary intoxication, he was physically incapable of assaulting Sergeant King;

(2) that he did not perform a voluntary act; and (3) that the injury he caused was *de minimis*. We disagree.

**{¶33}** When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, (1997), superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *Id*.

**{¶34}** Galbraith was convicted of assault. R.C. 2903.13(A) is the relevant statute and it states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." The term "knowingly" means when a person "is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Additionally, "physical harm" refers to "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶35} A review of the record reveals three key items of evidence that support a guilty finding in this matter. First, Sergeant King testified that Galbraith kicked him on his left leg. Further, Sergeant King described Galbraith as lifting his left leg and kicking backwards. Second, Officer Isom, who was immediately next to Sergeant King at the time of the alleged assault, similarly testified that he saw Galbraith kick Sergeant King in this fashion. Indeed, both officers demonstrated the same kicking motion for the jurors. *See State v. Hamblett-Catt*, 3d Dist. No. 15-05-10, 2005-Ohio-5894, ¶ 18 (finding that assault conviction was not contrary to the manifest weight of the evidence where the alleged victim testified that the defendant hit her).

{¶36} Third, the video of the incident is consistent with both Sergeant King's and Officer Isom's testimony. While Officer Isom's placement partially obstructs the camera view and prevents viewers from observing the actual kick, the video captures images that are consistent with the type of kick the officers described. It shows Galbraith lifting his left leg and it shows Sergeant King lean back as though he has been kicked. Based on this, we find that the video is supportive of a conviction. In light of these three items of evidence, we do not find that Galbraith's conviction is against the manifest weight of the evidence.

{¶37} Galbraith's arguments to the contrary are unavailing. As stated above, the evidence does not suggest that his voluntary intoxication rendered

Galbraith physically incapable of kicking Sergeant King. Rather, the evidence established that Galbraith was indeed capable of walking and talking so as to preclude the applicability of R.C. 2901.21(C). *See State v. Armstrong*, 7th Dist. No. 2007-G-2756, 2007-Ohio-6405, ¶ 25 (finding that the defendant's voluntary intoxication did not establish that conviction was against manifest weight of the evidence since the defendant was physically capable of operating a bulldozer).

{¶38} Further, the testimony of Officer Isom and Sergeant King established that Galbraith's kicking motion was voluntary. For a defendant to be criminally liable, his actions must be voluntary. R.C. 2901.21(A)(1). While "voluntary" is not precisely defined, the Revised Code does state that "[r]eflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition" constitute "involuntary acts." R.C. 2901.21(D)(2). The evidence at trial established that Sergeant King and another corrections officer were using some degree of force to restrain Galbraith at the time that he kicked Sergeant King. However, there is no indication, besides Galbraith's own characterization of the evidence, that the officers' restraining activities overcame Galbraith's volition and caused the kicking motion. Rather, both Officer Isom and Sergeant King testified that they saw Galbraith lift his left leg and kick out towards Sergeant King's leg in a deliberate fashion. Based on

this evidence, we decline to adopt Galbraith's characterization of his act as involuntary.

{¶39} Finally, we reject Galbraith's contention regarding the *de minimis* nature of Sergeant King's injury as immaterial to his assault conviction. Critically, we note that the assault statute proscribes both "caus[ing]" and "attempt[ing] to cause" physical harm. R.C. 2903.13(A). The court seized upon this language in *State v. Brown*, 2d Dist. No. 20737, 2005-Ohio-3871, to affirm the defendant's assault conviction. There, the defendant punched the victim, but the victim neither claimed to have sustained any injury nor displayed any sign of injury. Nevertheless, the Court of Appeals affirmed his conviction on the reasoning that the circumstances of the case, including the punch itself, established that the defendant "attempted to cause physical harm to [the victim] even though he apparently failed to actually injure [the victim]." *Id*. at ¶ 9; *compare State v. Smith*, 3d Dist. No. 13-03-25, 2003-Ohio-5461, ¶ 32 (interpreting domestic violence statute, which similarly criminalizes "caus[ing] or attempt[ing] to cause physical harm," as allowing "[a] defendant [to] be found guilty of domestic violence even if the victim sustains only minor injuries, or sustains *no injury at all*").

{¶40} Here, the State offered no evidence regarding Sergeant King's injury from the kick. But, this is not a fatal flaw in the State's case. According to

Officer Isom's and Sergeant King's testimony, Galbraith deliberately raised his left leg, kicked backwards, and landed a blow on Sergeant King's leg. From this, the jurors could glean that Galbraith was attempting to cause physical harm to Sergeant King. Consequently, we find Galbraith's argument that Sergeant King's injury was *de minimis* to be unpersuasive.

{¶41} In sum, the State offered the testimony of Officer Isom and Sergeant King that Galbraith kicked Sergeant King in his left leg. Further, the video of the incident reveals a sequence of events that is consistent with the officers' testimony. Meanwhile, Galbraith's arguments regarding his voluntary intoxication, his allegedly involuntary action, and Sergeant King's *de minimis* injury are unavailing and immaterial to our finding that Galbraith's assault conviction is not contrary to the manifest weight of the evidence.

{¶42} Accordingly, we overrule Galbraith's first assignment of error.

*Assignment of Error No. V*

{¶43} In his fifth assignment of error, Galbraith contends that cumulative error in the trial court proceedings deprived him of due process. We disagree.

{¶44} The doctrine of cumulative error provides that "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Baucom*,

3d Dist. No. 17-03-14, 2003-Ohio-6986, ¶ 6, quoting *State v. Leach*, 150 Ohio App.3d 567, 2002-Ohio-6654, ¶ 57 (1st Dist.). The appellant must show that there is a reasonable probability that but for the errors, the trial outcome would have been different. *State v. Ray*, 3d Dist. No. 14-05-39, 2006-Ohio-5640, ¶ 68. Here, because we have found no errors in Galbraith's previous assignments, his argument that cumulative error has resulted in a denial of due process must also necessarily fail. *State v. Bradley*, 3d Dist. No. 15-10-03, 2010-Ohio-5422, ¶ 83.

**{¶45}** Accordingly, we overrule Galbraith's fifth assignment of error.

**{¶46}** Having found no error prejudicial to Galbraith, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**